IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ILLINOIS

THOMAS M. G.,

          **Plaintiff,**

v.

**Case No. 25-CV-01182-SPM**

COMMISSIONER OF SOCIAL SECURITY,

          **Defendant.**

## <u>MEMORANDUM AND ORDER</u>

**McGLYNN, District Judge:**

In accordance with 42 U.S.C. § 405(g), Plaintiff, represented by counsel, seeks judicial review of the final agency decision denying his application for Disability Insurance Benefits ("DIB") pursuant to 42 U.S.C. § 423.

### PROCEDURAL HISTORY

Plaintiff applied for benefits on August 8, 2022, alleging disability that began on October 26, 2021. (Doc. 9, Ex. E, pp. 5–11). The Disability Examiner denied the application on March 29, 2023, and upon reconsideration on October 23, 2023. (*Id.*, Ex. C, pp. 27–38). On June 13, 2024, following a hearing, the Administrative Law Judge ("ALJ") also denied the application for benefits (*Id.*, Ex. B, pp. 1–25). On April 24, 2025, the Appeals Council denied review, and the decision of the ALJ became the final agency decision. (*Id.*, Ex. B, pp. 1–4). Plaintiff then filed a timely complaint in this Court. (Doc. 1).

### ISSUE RAISED BY PLAINTIFF

Plaintiff raises the following issue: the ALJ failed to build a logical bridge from the evidence to her conclusion by incorrectly stating that Plaintiff had a normal gait at a consultative appointment, by incorrectly summarizing Plaintiff's visits with Dr. Kevin Koth in January and February of 2024, and by incorrectly stating that Plaintiff had complained of pain and weakness in his left elbow and hand when a physician observed pain and weakness. (Doc. 13, pp. 5–7).

### APPLICABLE LEGAL STANDARDS

Under the Social Security Act, a person is disabled if he has an "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A). To determine whether a plaintiff is disabled, the ALJ considers the following five questions in order: (1) Is the plaintiff presently employed (2) Does the plaintiff have a severe impairment or a combination of impairment that are severe? (3) Do the impairments meet or medically equal one of a list of specific impairments enumerated in the regulations? (4) Is the plaintiff able to perform his former occupation? and (5) Is the plaintiff able to perform any other work? 20 C.F.R. § 416.920(a)(4); *see Hess v. O'Malley*, 92 F.4th 671, 677 (7th Cir. 2024).

If the plaintiff is employed or does not have a severe impairment, then the plaintiff is not disabled. 20 C.F.R. § 416.920(a)(4)(i)–(ii). Otherwise, the plaintiff is disabled if either (1) the impairments meet or medically equal one of a list of specific

impairments enumerated in the regulations; or (2) the plaintiff is unable to perform his former occupation and cannot make an adjustment to other work. § 416.920(a)(4)(iii)–(v). The plaintiff bears the burden of proof at all stages of the analysis except showing that he cannot make an adjustment to other work. *See Zurawski v. Halter*, 245 F.3d 881, 886 (7th Cir. 2001). At that final step, the Commissioner bears the burden of showing that other work exists in significant numbers in the national economy which the plaintiff has the capacity to perform. *Id.*

This Court reviews the ALJ's decision to ensure that the decision is supported by substantial evidence and employs the correct legal standards. *Scheck v. Barnhart*, 357 F.3d 697, 699 (7th Cir. 2004). Substantial evidence means "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Biestek v. Berryhill*, 587 U.S. 97, 103 (2019) (quoting *Consolidated Edison Co. v. NLRB*, 305 U.S. 197, 229 (1938)). When reviewing for "substantial evidence," this Court considers the entire administrative record but does not "reweigh evidence, resolve conflicts, decide questions of credibility, or substitute [its] judgment." *Burmester v. Berryhill*, 920 F.3d 507, 510 (7th Cir. 2019) (quoting *Lopez ex rel. Lopez v. Barnhart*, 336 F.3d 535, 539 (7th Cir. 2003)).

### THE DECISION OF THE ALJ

The ALJ followed the five-step analytical framework described above. *See* 20 C.F.R. § 416.920(a)(4); *Hess*, 92 F.4th at 677. She found that Plaintiff worked after the alleged disability onset date but determined that Plaintiff had not worked at the level of "substantial gainful activity," the threshold of earnings which would

disqualify him from DIB benefits. (Doc. 9, Ex. B, p. 18). The ALJ found that Plaintiff had "severe impairments" of "status post left total knee arthroplasty, status post lower lumbar fusion with mild multilevel degenerative disc disease of the upper to mid lumbar spine, left ulnar neuropathy, degenerative disc disease of the cervical spine, mild to moderate facet hypertrophy of the upper thoracic spine, [and] mild left ankle osteoarthritis." (*Id.*).

The ALJ found that Plaintiff had the Residual Functional Capacity ("RFC") to perform light work with the following limitations: only occasionally climbing ramps and stairs; no climbing ladders, ropes, or scaffolds; no balancing on narrow slippery or erratically moving surfaces; only occasional stooping and crawling, but no kneeling or crouching; no overhead reaching bilaterally; and only frequent fine and gross manipulation of the left arm and hand. (*Id.*, Ex. B, p. 21). Based on the testimony of the vocational expert, the ALJ found that Plaintiff could not do his past relevant work as a carpenter, which he performed at the medium to high exertion level. (*Id.*, Ex. B, p. 25). Nevertheless, the ALJ found that Plaintiff is not disabled because he could work as a housekeeper or cleaner, cashier, or fast-food counter worker—all of which are jobs that exist in significant numbers in the national economy. (*Id.*, Ex. B, pp. 25–26).

## THE EVIDENTIARY RECORD

This Court considers the entire evidentiary record in reviewing the ALJ's findings. The Court finds that the ALJ's summary of the record in her decision, when

compared with the issues raised by the Plaintiff, is sufficiently comprehensive. The Court will note some key findings.

## I.     Agency Records

Plaintiff was born in 1972 and had at least a high school education. (*Id.*, Ex. B, p. 25). In his function report, Plaintiff claims that he was unable to continue working due to pain and impairments in his left knee, alongside numbness and tingling in his left hand, difficulty raising his left arm, and stiffness and pain in his lower back. (*Id.*, Ex. B, p. 22). Plaintiff stated that he can stand for 45 minutes before his knee begins to swell, and that he spends hours a day with his leg elevated to avoid swelling. (*Id.*, Ex. B, pp. 40–41).

## II.    Medical Records

In October of 2021, Plaintiff complained of left knee pain, weakness, and instability. (*Id.*, Ex. G, pp. 59–64). In January of 2022, Plaintiff underwent an anterior cruciate ligament reconstruction procedure with a quadriceps tendon autograft, partial medial meniscectomy, chondroplasty of the medial femoral condyle and trochlear groove, and a limited synovectomy. (*Id.*, Ex. G, pp. 10–23, 31–34). In July of 2022, Plaintiff complained of left knee pain, popping, stiffness, instability, and weakness. (*Id.*, Ex. G, pp. 55–58). On August 24, 2022, Plaintiff underwent a status post left total knee arthroplasty. (*Id.*, Ex. G, pp. 2–6). His medical records show that over the following months, he healed from the surgery, showed a full range of motion, had no instability, presented a normal gait, but experienced some swelling and tenderness. (*Id.*, Ex. G, pp. 2–6, 131–47, 191, 196; Ex. H, p. 10). In September 2023,

Plaintiff was examined and was able to walk 50 feet unassisted, showed a mild limp, was unable to hop on his left foot, had decreased movement in his left knee and cervical spine, and was only able to complete a 1/4th squat. (*Id.*, Ex. H, pp. 117–21).

Plaintiff also experienced impairments to his cervical spine, left arm, and left ankle. (*Id.*, Ex. H, pp. 7, 22). Imaging in June of 2023 revealed that Plaintiff had mild osteoarthritis in his ankle, moderate to severe degenerative changes in C4–C7 of his cervical spine, and mild to moderate facet hypertrophy of his upper thoracic spine. (*Id.*). Additionally, imaging in July of 2023 indicated that Plaintiff had left ulnar neuropathy of the elbow. (*Id.*, Ex. G, p. 222). Plaintiff experienced pain and weakness in his left elbow but maintained a full range of motion. (*Id.*, Ex. H, p. 127).

## III.   State Agency RFC Assessments

In March of 2023, Dr. Judith Kelly reviewed the evidence of record available at the time. (*Id.*, Ex. C, pp. 20–29). She found that Plaintiff could perform work at the light exertional level. (*Id.*, Ex. C, pp. 25–27). Additionally, in October of 2023, Dr. Ranga Reddy assessed Plaintiff's RFC on review and found that Plaintiff could perform work at the light exertional level, agreeing with Dr. Kelly's findings. (*Id.*, Ex. C, pp. 30–38). Regarding psychiatric review, both Dr. David Voss and Dr. Donna Galassi-Hudspeth found that Plaintiff's history of ADHD and anxiety is considered non-severe and did not present significant limitations. (*Id.*, Ex. C, pp. 24, 34–35).

ANALYSIS

When an ALJ considers medical evidence, she "may give less weight to an opinion that is, for example, inconsistent with the opinions of other physicians,

internally inconsistent, or based solely on the patient's subjective complaints." *Yokosh v. Bisignano*, 170 F.4th 631, 637–38 (7th Cir. 2026) (citing *Baptist v. Kijakazi*, 74 F.4th 437, 444 (7th Cir. 2023)). "In doing so, the ALJ must 'examine[ ] the appropriate factors under agency regulations'—which include the length, nature, and extent of the physician and claimant's treatment relationship; whether the physician supported his opinion with sufficient explanation; and whether the physician specializes in the medical conditions at issue—and must 'minimally articulate[ ] [her] reasoning[.]'" *Id.* at 638 (quoting *Crowell v. Kijakazi*, 72 F.4th 810, 816 (7th Cir. 2023)).

Plaintiff argues that the ALJ failed to build a logical bridge from the evidence to her conclusions by incorrectly stating that Plaintiff had a normal gait at a consultative appointment, by incorrectly summarizing Plaintiff's visits with Dr. Koth in January and February of 2024, and by incorrectly stating that Plaintiff had complained of pain and weakness in his left elbow and hand. (Doc. 13). The Court rejects these claims because the ALJ properly described and summarized Plaintiff's medical history, going well beyond the standard that she minimally articulate her reasoning for her treatment of medical evidence.

Plaintiff first claims that the ALJ incorrectly stated that he had a normal gait at a September 2023 consultative appointment where he was unable to hop on his left leg, walked with a limp, could flex his knee only 90 degrees, and could complete only a 1/4th squat. (*Id.*). But the ALJ did not improperly describe this medical appointment. (Doc 9, Ex. B, p. 22; Ex. H, pp. 10, 116–18). The ALJ described two

different September 2023 consultative appointments, noting that at one appointment, Plaintiff was able to walk with a normal gait, and at the other appointment, Plaintiff presented with a mild limp. (*Id.*). Given that the ALJ accurately described the medical appointments, there is no error here.

Plaintiff also claims that the ALJ incorrectly summarized Plaintiff's visits with Dr. Koth in January and February of 2024 by saying that "Imaging of the knee in January and February 2024 was generally normal but showed some arthritis in the patellofemoral compartment" (*Id.*, Ex. B, p. 23; Doc. 13, p. 6). This was an accurate summary. (Doc. 9, Ex. H, pp. 132, 138). The medical reports indicate that Plaintiff's knee demonstrated crepitus and contained narrowing of the patellofemoral joint and arthritis in the patellofemoral compartment, and that Plaintiff was diagnosed with osteoarthritis (*Id.*). Because the ALJ's general explanation of Plaintiff's condition from these visits surpasses the minimal articulation standard, there is no error here.

Finally, Plaintiff argues that the ALJ incorrectly stated that he had "complained" of pain and weakness in his left elbow and hand when Plaintiff had objective physical signs that he had weakness in his left elbow and hand at a November 2023 appointment. (Doc. 13, p. 7). But the ALJ did properly consider the evidence provided from this appointment, including that Plaintiff's "medical provider opined that the claimant may require a C5-C7 vertebrae fusion procedure." (Doc. 9, Ex. B, p. 23). Furthermore, the ALJ found that due to Plaintiff's "impairments affecting his left arm and cervical spine, he cannot engage in overhead reaching bilaterally and is limited to frequent fine and gross manipulation with the left non-

dominant upper extremity." (*Id.*, Ex. B, p. 21). The ALJ's summary of these medical records along with her conclusions exceeded the standard that she minimally articulate her reasoning. *See Elder v. Astrue*, 529 F.3d 408, 414 (7th Cir. 2008). There is no error here.

## CONCLUSION

The ALJ committed no reversible errors of law, and her findings are supported by substantial evidence. Accordingly, the final decision of the Commissioner of Social Security denying Plaintiff's applications for disability benefits is **AFFIRMED**. The Clerk of Court is **DIRECTED** to close this case and enter judgment in favor of Defendant.

**IT IS SO ORDERED.**

 **DATED:  July 15, 2026**

**STEPHEN P. McGLYNN**
**U.S. District Judge**